**[ORAL ARGUMENT SCHEDULED FOR NOVEMBER 21, 2017]**

**No. 17-5171**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

––––––––––––––––––––

ELECTRONIC PRIVACY INFORMATION CENTER,

Plaintiff-Appellant,

v.

PRESIDENTIAL ADVISORY COMMISSION
ON ELECTION INTEGRITY, et al.,

Defendants-Appellees.

––––––––––––––––––––

On Appeal from the United States District Court
for the District of Columbia

––––––––––––––––––––

**BRIEF FOR APPELLEES**

––––––––––––––––––––

CHAD A. READLER
  *Acting Assistant Attorney General*

CHANNING D. PHILLIPS
  *United States Attorney*

MARK B. STERN
DANIEL TENNY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1838*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

The appellant in this Court, plaintiff in the district court, is the Electronic Privacy Information Center. The defendants in the district court, appellees in this Court, are the Presidential Advisory Commission on Election Integrity; Michael R. Pence, in his official capacity as Chair of the Presidential Advisory Commission on Election Integrity; Kris W. Kobach, in his official capacity as Vice Chair of the Presidential Advisory Commission on Election Integrity; the Executive Office of the President of the United States; the Office of the Vice President of the United States; the General Services Administration; the United States Department of Defense; Charles G. Herndon, in his official capacity as Director of White House Information Technology; the United States Digital Service; and the Executive Committee for Presidential Information Technology. There were no amici in the district court.

### B. Rulings Under Review

The ruling under review is the memorandum opinion and accompanying order issued on July 24, 2017, by Judge Colleen Kollar-Kotelly, docket numbers 40 and 41 [JA 14, 49]. The district court's opinion is not yet published.

### C. Related Cases

This matter has not previously been before this Court or any other court. There are three additional cases pending in the U.S. District Court for the District of Columbia that challenge actions of the Presidential Advisory Commission on Election

Integrity.  One of those cases, *Common Cause v. Presidential Advisory Committee on Election Integrity*, No. 17-1398 (D.D.C.), like this case, involves a challenge to the Commission's collection, on a voluntary basis, of publicly available voter data from state election officials, though the plaintiff in that case is relying on the Privacy Act and not the E-Government Act of 2002 relied on by plaintiff here.  In two other cases, *American Civil Liberties Union v. Trump*, No. 17-1351 (D.D.C.), and *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity*, No. 17-1354 (D.D.C.), the plaintiffs are urging that the Commission has violated the document-disclosure and open-meetings provisions of the Federal Advisory Committee Act (FACA).  An appeal from the denial of a preliminary injunction in *Lawyers' Committee for Civil Rights Under Law* is currently pending in this Court.  *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, No. 17-5167 (D.C. Cir.).  No briefing schedule has been set in that case.

*s/ Daniel Tenny*
Daniel Tenny

# TABLE OF CONTENTS

**Page**

GLOSSARY ................................................................................................... viii

INTRODUCTION ............................................................................................... 1

STATEMENT OF JURISDICTION .................................................................... 3

STATEMENT OF THE ISSUES ........................................................................ 4

PERTINENT STATUTES AND REGULATIONS............................................. 4

STATEMENT OF THE CASE ........................................................................... 4

    A.    Facts and Prior Proceedings.................................................... 4

    B.    The District Court's Decision.................................................. 7

        1.    Standing........................................................................ 7

        2.    Merits ........................................................................ 10

SUMMARY OF ARGUMENT ......................................................................... 12

STANDARD OF REVIEW............................................................................... 14

ARGUMENT .................................................................................................... 14

I.    Plaintiff lacks standing to seek a preliminary injunction barring the Commission from receiving voter-roll data........................................... 14

    A.    The district court properly concluded that plaintiff could not establish standing based on potential data collection .............................. 14

    B.    Plaintiff cannot circumvent the lack of injury from the data collection it seeks to enjoin by asserting informational injury from the lack of a prerequisite report, the production of which it does not seek to compel......................................................... 16

1.     An injunction prohibiting the government from collecting
       data during the pendency of this litigation would not
       remedy any informational injury ..................................................... 17

2.     The statutory provision relied on here was designed
       to protect privacy and does not create a cognizable
       informational interest in plaintiff ..................................................... 19

II.    Plaintiff does not have a likelihood of success on the merits because
       neither the President, who established the Commission, nor the
       Commission itself nor any other relevant actor is an agency for
       purposes of the E-Government Act or the APA ................................................. 22

       A.     The requirements of the E-Government Act do not apply
              to the President, the Commission, the Director of White House
              Information Technology, or any other relevant entity or official .......... 23

       B.     Plaintiff likewise fails to establish a cause of action under the
              APA, which applies only to agencies ........................................................ 29

III.   The other relevant factors support denial of a preliminary injunction .............. 31

CONCLUSION ........................................................................................................ 32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                  **Page(s)**

*American Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*,
   659 F.3d 13 (D.C. Cir. 2011) ................................................................ 16

*Armstrong v. Bush*,
   924 F.2d 282 (D.C. Cir. 1991) .............................................................. 30

*Citizens for Responsibility & Ethics in Wash. v. Executive Office*
   *of the President*, 587 F. Supp. 2d 48 (D.D.C. 2008) ........................... 30

*Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*,
   566 F.3d 219 (D.C. Cir. 2009) .............................................................. 25

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
   58 F.3d 738 (D.C. Cir. 1995) ................................................................ 14

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ............................................................................. 17

*Energy Research Found. v. Defense Nuclear Facilities Safety Bd.*,
   917 F.2d 581 (D.C. Cir. 1990) ........................................................27, 28

*FEC v. Akins*,
   524 U.S. 11 (1998) ........................................................................16, 17, 19

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ............................................................................. 29

*Freedom Watch, Inc. v. Obama*,
   807 F. Supp. 2d 28 (D.D.C. 2011) ...................................................... 26

*Friends of Animals v. Jewell*,
   824 F.3d 1033 (D.C. Cir. 2016) ........................................................... 19

*Friends of Animals v. Jewell*,
   828 F.3d 989 (D.C. Cir. 2016) ..........................................................9, 19

*Fund Democracy, LLC v. SEC,*
   278 F.3d 21 (D.C. Cir. 2002) ...................................................................7, 15, 16

*Gates v. Schlesinger,*
   366 F. Supp. 797 (D.D.C. 1973) .................................................................. 26

*Heartwood, Inc. v. U.S. Forest Serv.,*
   431 F. Supp. 2d 28 (D.D.C. 2006) ............................................................... 26

*Hunt v. Washington State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) ................................................................................. 7, 15

*Kissinger v. Reporters Comm. for Freedom of the Press,*
   445 U.S. 136 (1980) ..............................................................................24, 25, 30

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ..................................................................................... 18

*Meyer v. Bush,*
   981 F.2d 1288 (D.C. Cir. 1993) .............................................................24, 26, 27

*Nader v. FEC,*
   725 F.3d 226 (D.C. Cir. 2013) ................................................................. 19, 20

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.,*
   797 F.3d 1087 (D.C. Cir. 2015) ................................................................... 22

*Public Citizen Health Research Grp. v. Commissioner, Food & Drug Admin.,*
   724 F. Supp. 1013 (D.D.C. 1989) ............................................................... 31

*Shays v. FEC,*
   528 F.3d 914 (D.C. Cir. 2008) ..................................................................... 19

*Soucie v. David,*
   448 F.2d 1067 (D.C. Cir. 1971) ................................................................... 30

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ................................................................................. 18, 19

*United States v. Espy,*
   145 F.3d 1369 (D.C. Cir. 1998) ............................................................... 11, 25

*Wolfe v. Weinberger*,
  403 F. Supp. 238 (D.D.C. 1975) ........................................................ 26

**Statutes:**

Act of Sept. 6, 1966, Pub. L. No. 89-554, 80 Stat. 378 ............................ 29

Administrative Procedure Act:
  5 U.S.C. § 551(1) ............................................................................ 29
  5 U.S.C. § 701(b)(1) ........................................................................ 29
  5 U.S.C. § 706 .......................................................................... 10, 23

E- Government Act of 2002,
  Pub. L. No. 107-347, 116 Stat. 2899,
  *codified at* 44 U.S.C. § 3501 note .................................... 1, 6, 9, 20, 21, 22, 23

Freedom of Information Act, 5 U.S.C. § 552(f)(1) .............................. 24, 25

Paperwork Reduction Act, 44 U.S.C. § 3502 .......................................... 23

28 U.S.C. § 1292(a)(1) .............................................................................. 3

28 U.S.C. § 1331 ...................................................................................... 3

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ........................................................................ 3

**Legislative Materials:**

H.R. Rep. No. 89-901 (1965) .................................................................. 30

H.R. Rep. No. 93-1380 (1974) (Conf. Rep.) ...................................... 25, 30

**Other Authorities:**

*About EPIC*, http://epic.org/epic/about.html ................................ 7, 14, 15

Exec. Order No. 13,799,
  82 Fed. Reg. 22,389 (May 11, 2017) ........................................ 4, 5, 26, 28

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| EPIC | Electronic Privacy Information Center |
| FACA | Federal Advisory Committee Act |
| FOIA | Freedom of Information Act |
| GSA | General Services Administration |

## INTRODUCTION

The President established the Presidential Advisory Commission on Election Integrity to study and provide advice with respect to registration and voting processes used in federal elections. The Commission, which is chaired by the Vice President, has asked States and the District of Columbia to provide, on a voluntary basis, publicly available data from state voter rolls. The Director of White House Information Technology was tasked with developing a secure means of receiving data from the States using an existing White House system.

Plaintiff, the Electronic Privacy Information Center, sought a preliminary injunction to bar the Commission from collecting voter-roll data. Plaintiff invoked the E-Government Act of 2002, which requires "agenc[ies]" that collect certain types of data to "conduct a privacy impact assessment" that would, "if practicable," be made "publicly available." E-Government Act of 2002, § 208(b), Pub. L. No. 107-347, 116 Stat. 2899, 2921-22, *codified at* 44 U.S.C. § 3501 note. Plaintiff argued that the Advisory Commission could not request the voter-roll data because it had not conducted a privacy impact assessment.

As discussed below, the district court correctly held that plaintiff had failed to demonstrate a likelihood of success on the merits. But the court should not have reached the merits question because plaintiff lacks standing. The district court recognized that plaintiff would not be injured by the collection of data that it sought to enjoin. The court thus should have concluded that plaintiff lacked standing,

because an injunction temporarily prohibiting the government from collecting data would not redress any injury.

The court concluded that plaintiffs had standing based on an asserted "informational injury," premised on plaintiff's assertion that it would read a privacy impact assessment if one were prepared. But the requested injunction would not compel the government to prepare such an assessment; instead, it would merely enjoin the government from collecting data before a privacy impact assessment was prepared. Such an injunction would not redress any injury, even if the court were correct that plaintiff had standing to seek to compel the preparation of a privacy impact assessment.

In addition, the district court's theory of informational standing fails on its own terms. The statutory requirement on which plaintiff relies was expressly designed to protect the privacy of individuals whose data might be collected, not to provide information to unaffected entities. The district court's theory of standing would suggest that any plaintiff could seek an injunction against agency action, even if the agency action did not cause the plaintiff to suffer any cognizable injury, in the common circumstance in which the agency action happened to be conditioned on the publication of a government report. That is not the law.

On the merits, the definition of "agency" for purposes of the Administrative Procedure Act and the E-Government Act does not encompass the President or Vice President or entities within the Executive Office of the President that provide advice

2

and assistance to the President but exercise no independent authority. Thus, neither statute governs the actions of the President or Vice President, and, as the district court explained, the Director of White House Information Technology clearly falls within the category of persons who exercise no independent authority. Federal advisory committees have never been thought to fall within the definition of "agency," and the Commission in this case exists solely to provide advice to the President and exercises no independent authority. Plaintiffs thus cannot establish that they have a cause of action under the Administrative Procedure Act or that the requirement to conduct a privacy impact assessment applies here, and their claim is thus doubly foreclosed on the merits.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331. The district court's jurisdiction was contested: as discussed at Point I of our argument, the government contends that the district court lacked jurisdiction because plaintiff lacks standing. The district court denied a motion for a temporary restraining order and preliminary injunction without prejudice on July 24, 2017. Mem. Op. [JA 14]; Order [JA 49]. Plaintiff filed a timely notice of appeal on July 25, 2017. *See* Fed. R. App. P. 4(a)(1)(B). Insofar as the district court denied plaintiff's motion for a preliminary injunction, this Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

**1.** Whether plaintiff has a judicially cognizable claim for a preliminary injunction to prevent the Presidential Advisory Commission on Election Integrity from collecting, on a voluntary basis, voter data from state election officials, based on plaintiff's assertion that the Commission was compelled to prepare a report before collecting the data and that plaintiff wishes to review that report.

**2.** Whether the district court correctly denied a preliminary injunction against the voluntary collection of voter data, because an advisory committee is not an "agency" and thus not subject to the Administrative Procedure Act or the E-Government Act of 2002.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.     Facts and Prior Proceedings

**1.** On May 11, 2017, the President established the Presidential Advisory Commission on Election Integrity.  Exec. Order No. 13,799, 82 Fed. Reg. 22,389 (May 11, 2017) [JA 55].  The Commission is charged with "study[ing] the registration and voting processes used in Federal elections."  *Id.* § 3.  The Executive Order establishing the Commission provides that the Vice President will chair the Commission, and up to fifteen additional members will be appointed by the President. *Id.* § 2.  The Vice President has authority to select a Vice Chair from among the

4

members, *id.*, and has selected Kansas Secretary of State Kris Kobach to serve as Vice Chair, Mem. Op. 4 [JA 17].  The Commission's other members include Commissioner Christy McCormack of the Election Assistance Commission (serving in her individual capacity) and "a number of state election officials, both Democratic and Republican, and a Senior Legal Fellow of the Heritage Foundation." *Id.*

In furtherance of the Commission's mandate, the Vice Chair sent letters to the States and to the District of Columbia, soliciting their views on several policy questions and, most relevant here, requesting publicly available data from state voter rolls.  Mem Op. 5 [JA 18].  Among other things, the letter requested "publicly available voter roll data" from each State, and specified that the requested data should include certain information "if publicly available under the laws of [the relevant] state." *See id.* (quoting letter to Alabama).  In particular, States were asked to provide, if it was publicly available, "the full first and last names of all registrants, middle names or initials if available, addresses, dates of birth, political party (if recorded in your state), last four digits of social security number if available, voter history (elections voted in) from 2006 onward, active/inactive status, cancelled status, information regarding any felony convictions, information regarding voter registration in another state, information regarding military status, and overseas citizen information." *Id.*

The Vice Chair initially requested responses by July 14, 2017.  First Decl. of Kris Kobach ¶ 5 & Ex. 3 [JA 51-52, 61-62].  He asked for narrative responses to be

sent by email if they did not include data, and for data files to be submitted using the Safe Access File Exchange, a secure method of transferring large files that is administered by the Department of Defense. *Id.*

**2.** Plaintiff, the Electronic Privacy Information Center, filed this action on July 3, 2017, and sought a temporary restraining order prohibiting the Commission from collecting voter-roll data. Plaintiff urged that the Commission should be barred from requesting data because it had not complied with a provision of the E-Government Act of 2002 that requires, under certain circumstances, an "agency" to "conduct a privacy impact assessment" and, "if practicable," make the assessment "publicly available." E-Government Act of 2002, § 208(b), Pub. L. No. 107-347, 116 Stat. 2899, 2921-22, *codified at* 44 U.S.C. § 3501 note.

While the motion was pending, the government filed a declaration from the Vice Chair informing the district court that the Commission had notified the States that they should not submit any data while plaintiff's motion was pending. Mem. Op. 8 [JA 21]. The declaration also noted that the Commission would not use the Safe Access File Exchange, or any other system administered by the Department of Defense. *Id.* Instead, the Director of White House Information Technology was developing a secure means of obtaining data from the States using an existing White House system. *Id.*

In light of these developments, plaintiff amended its complaint and filed an amended motion for a temporary restraining order and a preliminary injunction.

6

Mem. Op. 8 [JA 21].  While that motion was pending, the government filed a

declaration informing the court that the only data that had resided on the Department

of Defense system had been deleted without ever being accessed.  *Id.* at 9 [JA 22].

## B.    The District Court's Decision

### 1.    Standing

The court held that plaintiff lacked associational standing for two reasons.

First, associational standing may be asserted only if the organization is a membership

organization or "the functional equivalent of a membership organization."  Mem.

Op. 12 [JA 25] (quoting *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir.

2002)).  The "test of functional equivalency," *id.*, assesses whether an organization

"serve[s] a specialized segment of the community," represents individuals with "all of

the indicia of membership in an organization," and has fortunes "closely tied to those

of its constituency," *Fund Democracy*, 278 F.3d at 26 (quoting *Hunt v. Washington State

Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977)).  The "indicia of membership"

include the ability to elect the entity's leadership, service in the entity, and financing

the entity's activities.  *Id.*

Plaintiff sought to assert the interests of members of its "advisory board."

Mem. Op. 12 [JA 25].  But the court noted that "Plaintiff's own web site concedes

that the organization 'ha[s] no clients, no customers, and no shareholders.'"  *Id.*

(quoting *About EPIC*, http://epic.org/epic/about.html).  And although plaintiff

asserted that its advisory board members "exert substantial influence" over the

7

organization's affairs and are "expected to contribute" either money or time and

expertise to the organization, the court noted that there was "no evidence" that the

board members were "*required* to finance the activities of the organization; that they

have any role in electing the leadership of the organization; or that their fortunes, as

opposed to their policy viewpoints, are 'closely tied' to the organization." *Id.* at 12-13

[JA 25-26] (emphasis in original).

The court also concluded, in any event, that the advisory board members

would lack standing in their own right.  The individual board members for whom

plaintiff claimed standing were "registered voters in states that ha[d] declined to

comply with the Commission's request for voter roll information."  Mem. Op. 13

[JA 26].  And even if the advisory board members' information had been transmitted

to the Commission, any harm from that transmission was not actual or imminent.  *Id.*

at 13-14 [JA 26-27].  The government had made clear that it was "only collecting voter

information that is already publicly available under the laws of the states where the

information resides."  *Id.* at 14 [JA 27].  In addition, the government had "only

requested this information and ha[d] not demanded it," and had "clarified that such

information, to the extent it is made public, will be de-identified."  *Id.*  Thus, plaintiff's

advisory board members' only practical harm would arise from the hypothetical

possibility that data would be compromised either through the Commission's

computer systems, or due to an inadequate effort to anonymize the information when

it is published, a "sequence of events" that the court held to be "too attenuated to confer standing." *Id.* at 14-15 [JA 27-28].

The court nevertheless determined that plaintiff had informational standing. That doctrine requires a plaintiff to show that it has been deprived of information to which it asserts an entitlement and that the denial of access causes the plaintiff to suffer the type of harm that Congress sought to prevent by requiring disclosure. *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016). Here, plaintiff's lawsuit invoked the E-Government Act of 2002, which requires agencies that collect certain data to "conduct a privacy impact assessment" that would, "if practicable," be made "publicly available." E-Government Act § 208(b), 116 Stat. at 2921-22. The court reasoned that if plaintiff were to prevail on this claim, it would obtain information that it could use to carry out its mission. Mem. Op. 17 [JA 30].

The district court concluded that plaintiff's standing was not affected by the fact that its injury might be shared with many other members of the public. Mem. Op. 20-21 [JA 33-34]. The court also rejected the government's argument that plaintiff could not have informational standing to seek information that does not yet exist. *Id.* at 21-22 [JA 34-35]. And the court held that the statutory proviso that information must only be made public if publication is "practicable" did not affect the standing analysis. *Id.* at 23 [JA 36].

For similar reasons to those underlying its informational-standing holding, the district court concluded that plaintiff had organizational standing, reasoning that

plaintiff's ability to educate the public was impeded by its lack of access to the information at issue here.  Mem. Op. 24-26 [JA 37-39].

### 2.    Merits

The district court concluded, however, that plaintiff did not have a likelihood of success on the merits.  The government had argued that the Commission did not qualify as an "agency" for purposes of the E-Government Act and the Administrative Procedure Act.  Reaching only the APA issue, the district court agreed that the Commission was not an "agency."

Plaintiff brought this action under the Administrative Procedure Act, and its cause of action is therefore limited to action or inaction by an "agency."  5 U.S.C. § 706.  The court held, however, that the record before it was "insufficient to demonstrate that the Commission is an 'agency' for purposes of the APA."  Mem. Op. 27 [JA 40].  The Commission is "purely advisory in nature" and has no "independent authority" to act apart from its "advisory mission."  *Id.* at 27-28 [JA 40-41].  It is therefore not an "agency," but is "merely an advisory body to the President that is exempted from APA review."  *Id.* at 27 [JA 40].

The court also concluded that the record before it did not suggest that there was any defendant other than the Commission itself against which an APA action for injunctive relief could proceed.  Plaintiff was no longer pursuing injunctive relief against the Department of Defense in light of the determination that the Defense Department's computer system would not be used.  Mem. Op. 28-29 [JA 41-42].  The

Director of White House Information Technology, who has authority over the computer system that will be used, merely provides operational and administrative support to the President and therefore does not qualify as an agency. *Id.* at 29-32 [JA 42-45]. Two other defendants, the Executive Committee for Presidential Information Technology and the U.S. Digital Service, are uninvolved in the data-collection process and thus provide no basis for injunctive relief. *Id.* at 32 [JA 45]. And plaintiff's contention that the Executive Office of the President is a "parent agency," and that the actions of its components are thus subject to review under the APA, "has been expressly rejected by [this Court]." *Id.* (citing *United States v. Espy*, 145 F.3d 1369, 1373 (D.C. Cir. 1998)).[1]

Having concluded that the APA did not apply, the district court did not expressly address the government's related argument that the Commission did not qualify as an "agency" for purposes of the E-Government Act.

Assessing the other factors relevant to the issuance of a preliminary injunction, the court concluded that plaintiff could not demonstrate irreparable injury. Mem. Op. 34-35 [JA 47-48]. The court observed that because "Plaintiff is essentially limited to pursing an informational injury, many of its theories of irreparable harm, predicated as

---

[1] The district court rejected plaintiff's reliance on the Federal Advisory Committee Act (FACA) on the ground that FACA does not require the creation of the privacy impact assessment that plaintiff seeks. Mem. Op. 33 [JA 46]. Plaintiff has not renewed any argument based on FACA in this Court.

they are on injuries to the private interests of its advisory board members, have been

rendered moot." *Id.* at 34 [JA 47]. And the court held that plaintiff's asserted

informational injury did not give rise to irreparable harm; "[t]o hold otherwise would

mean that whenever a statute provides for potential disclosure, a party claiming

entitlement to that information in the midst of a substantial public debate would be

entitled to a finding of irreparable informational injury, which cannot be so." *Id.* at 35

[JA 48]. Finally, the court reasoned that "the equitable and public interest factors are

in equipoise," because while disclosure might be in the public interest, "creating a

right to such disclosure out of whole cloth . . . is not." *Id.* at 35 [JA 48].

## SUMMARY OF ARGUMENT

**1.** The district court correctly recognized that plaintiff will suffer no injury

from the collection of data that it seeks to enjoin. But the district court mistakenly

found standing on the basis of plaintiff's assertion that it would read the privacy

impact statement that plaintiff asserts must be prepared before voter data is collected.

This conclusion was doubly flawed. First, even if the district court were to prohibit

the government from collecting data while this litigation proceeds, that preliminary

injunction would not redress plaintiff's asserted informational injury. Second, the

statute on which plaintiff relies does not create judicially cognizable rights in the

general public, but instead was designed to improve agency decisionmaking and to

protect the interests of individuals whose data might be subject to collection.

**2.** The district court correctly held that plaintiff has failed to demonstrate a likelihood of success on the merits. Plaintiff challenges the actions of an advisory committee whose sole function is to advise the President. The E-Government Act's definition of "agency," which is materially indistinguishable from that in the Freedom of Information Act, does not include the President or entities within the Executive Office of the President that serve only to provide advice and that exercise no independent authority. The requirements of the statute thus have no applicability here. Similarly, neither the President nor the Commission is an agency within the meaning of the Administrative Procedure Act, on which plaintiff relies for its cause of action. Plaintiff's claim is thus doubly foreclosed on the merits.

**3.** The balance of harms and the public interest likewise preclude the grant of the preliminary relief plaintiff seeks. As the district court recognized, plaintiff's assertion of irreparable harm was largely focused on injuries to the interests of entities not before the court. Even if the district court were correct that plaintiff had standing to seek production and disclosure of a privacy impact assessment, that alleged injury is not sufficiently imminent or irreparable to warrant a preliminary injunction. And on the other side of the ledger, issuance of a preliminary injunction would impede the functioning of a committee providing advice to the President.

13

## STANDARD OF REVIEW

This Court reviews the denial of a preliminary injunction for abuse of discretion, and reviews any underlying legal conclusions de novo. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).

## ARGUMENT

**I.    Plaintiff lacks standing to seek a preliminary injunction barring the Commission from receiving voter-roll data.**

**A.    The district court properly concluded that plaintiff could not establish standing based on potential data collection.**

Plaintiff brought this suit to "halt the collection of state voter data," Second Am. Compl. ¶ 1 [JA 133], and the requested preliminary injunction would enjoin the government "from collecting voter roll data from states and state election officials," Proposed Order, Dkt. No. 35-6 (July 13, 2017). The district court properly concluded, and plaintiff has not disputed on appeal, that the collection of such data would cause plaintiff no cognizable injury.

This case has not been brought by voters whose data will be collected by the federal government, much less voters who could demonstrate that such collection threatens imminent injury. Instead, plaintiff is a nonprofit organization that, by its own description, has "no clients, no customers, and no shareholders." *About EPIC*, http://epic.org/epic/about.html, *quoted in* Mem. Op. 12 [JA 25].

Nor does plaintiff have standing to seek relief on behalf of its "members." As the district court recognized, plaintiff is not a traditional membership organization

14

and has none of the features that characterize such organizations.  An organization can assert the interests of individuals only if the organization serves a specialized segment of the community, and seeks to represent individuals who have "all of the indicia of membership in an organization" and whose fortunes are closely tied to the fortune of the organization.  *See Fund Democracy, LLC v. SEC*, 278 F.3d 21, 26 (D.C. Cir. 2002) (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977)).

Plaintiff does not serve a specialized segment of the community, but rather seeks to serve the public at large.  Plaintiff describes itself as a "public interest research center" that was established to "focus public attention."  *About EPIC*, http://epic.org/epic/about.html.  It does not even purport to represent any particular segment of the community.

Plaintiff's advisory board is in no relevant sense a list of members.  The board helps the organization to perform its "wide range of program activities including policy research, public education, conferences, litigation, publications, and advocacy" by providing "expertise in law, technology and public policy."  *About EPIC*, http://epic.org/epic/about.html.  The board has none of the features that this Court has identified as indicia of membership: the people who sit on the advisory board have no obligation to fund the organization and have no role in electing the organization's leadership.  Mem. Op. 12-13 [JA 25-26]; *compare Fund Democracy*, 278 F.3d at 26 (noting that indicia of membership include election of leadership, service in

15

leadership roles, and financing the organization's activities). In addition, advisory board members are not affected by the organization's activities any more than other members of the general public. *Compare Fund Democracy*, 278 F.3d at 26 (in group that could assert associational standing, "the fortunes of the commission were closely tied to those of its constituency").

The district court also explained that even if the identified advisory board personnel were "members" in the relevant sense, they would not have standing in their own right. Based on the record before the district court, the court concluded that the identified individuals were "registered voters in states that have declined to comply with the Commission's request for voter roll information." Mem. Op. 13 [JA 26]. The record therefore did not suggest that their data would be transferred in any event, much less that they would suffer concrete harm.

> **B.     Plaintiff cannot circumvent the lack of injury from the data collection it seeks to enjoin by asserting informational injury from the lack of a prerequisite report, the production of which it does not seek to compel.**

Plaintiff cannot supply the requisite case or controversy by asserting "informational injury." In some circumstances, Congress provides a particularized right to disclosure of information, and the violation of that statutorily conferred right can suffice to establish standing. *See American Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 23 (D.C. Cir. 2011) (citing *FEC v. Akins*, 524 U.S. 11 (1998)). But plaintiffs in such circumstances have standing only to obtain the

16

information to which they are entitled.  They do not have standing to seek an injunction against agency action that does not cause them injury.  In addition, plaintiff's claim of informational standing fails even on its own terms, because plaintiff's asserted informational injury does not constitute the type of harm that Congress sought to avert by creating procedures to ensure that agencies protect individual privacy.

### 1. An injunction prohibiting the government from collecting data during the pendency of this litigation would not remedy any informational injury.

In *FEC v. Akins*, the Supreme Court recognized that a plaintiff with a cognizable interest in the disclosure of information had standing to seek an order compelling disclosure of that information.  But here, although plaintiff asserts an informational injury, plaintiff is not seeking access to a Commission meeting or access to the Commission's records.  The only relief plaintiff seeks is an injunction to halt the Commission's collection of voter-roll data.  Such an injunction would not redress plaintiff's asserted informational injury.

As the Supreme Court has repeatedly explained, "a plaintiff must demonstrate standing separately for each form of relief sought."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quotation marks omitted).  Thus, plaintiff cannot use its purported informational injury as a substitute for standing to challenge the agency action that it actually seeks to enjoin.  Were it otherwise, plaintiffs could routinely seek

17

to enjoin any government action by asserting that the action must be preceded by a published report, even when the proposed action causes them no injury at all.

Statutes often authorize government agencies to take prescribed actions only after making an assessment and issuing a report.  In such cases, plaintiffs challenging the ultimate agency action must demonstrate standing by showing that they would be injured by the contemplated action.  Plaintiffs who establish standing in this fashion are entitled to challenge the agency's failure to comply with procedural requirements such as the publication of reports that are the prerequisite for agency action.  For example, in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court explained that a plaintiff has standing to "enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs (*e.g.*, . . . the procedural requirement for an environmental impact statement before a federal facility is constructed next door to them)."  *Id.* at 572.

The Supreme Court has rejected, however, the notion of "standing for persons who have no concrete interests affected—persons who live (and propose to live) at the other end of the country from the dam."  *Lujan*, 504 U.S. at 572 n.7.  In a similar vein, the Court in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), held that a group of plaintiffs lacked standing to challenge the failure to provide notice and an opportunity to comment on a particular category of proposed agency actions.  The Court reiterated that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to

18

create Article III standing." *Id.* at 496. Plaintiff therefore lacks standing to challenge the data collection at issue here, regardless of whether plaintiff might have a cognizable interest in reviewing a privacy impact assessment if one had been prepared.

### 2. The statutory provision relied on here was designed to protect privacy and does not create a cognizable informational interest in plaintiff.

Plaintiff's claim of informational standing is also flawed on its own terms. As the district court recognized, informational injuries are cognizable only if "by being denied access to [the] information," the plaintiff suffers "the type of harm Congress sought to prevent by requiring disclosure." Mem. Op. 16 [JA 29] (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). As this Court has explained, "[i]t is not enough . . . to assert that disclosure is required by law." *Nader v. FEC*, 725 F.3d 226, 229 (D.C. Cir. 2013). Rather, the statute must "grant[] a plaintiff a concrete interest in the information sought." *Id.*

Thus, this Court has held that an organization that regularly participated in an agency permitting process had standing to seek to enforce a statute designed to provide adequate information to participants in that process. *Friends of Animals v. Jewell*, 824 F.3d 1033, 1040-42 (D.C. Cir. 2016). Similarly, when Congress enacted a disclosure obligation to facilitate informed participation in the political process, plaintiffs who sought information for that purpose had informational standing. *See Nader*, 725 F.3d at 229 (discussing *FEC v. Akins*, 524 U.S. 11 (1998), and *Shays v. FEC*, 528 F.3d 914 (D.C. Cir. 2008)). But a plaintiff lacked standing when he sought

information not to facilitate his own political participation, but rather to force an agency to enforce the law.  *See id.* at 230.

Here, because plaintiff lacks any cognizable interest in preventing data collection, it is not seeking to redress the type of harm that Congress sought to prevent in the statutory provision on which plaintiff relies.  That statutory provision makes plain that it was designed to protect the privacy of those whose data is being collected, not to remedy a dearth of public information about governmental data-gathering efforts.  The statute states explicitly that "[t]he purpose of this section is to ensure sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government."  E-Government Act § 208(a), 116 Stat. at 2921.  To serve that purpose, the Act requires agencies that collect, maintain, or disseminate personally identifiable information in electronic form to conduct a privacy impact assessment before gathering data, and have that assessment reviewed by the agency's Chief Information Officer or equivalent.  *Id.* § 208(b)(1)(B)(i)-(ii), 116 Stat. at 2922.  These requirements are designed to improve the government's decisionmaking, and plainly do not give rise to an informational interest in the general public.  The requirement that, "after completion of the review" by the Chief Information Officer or equivalent, an agency must make the assessment publicly available "if practicable," *id.* § 208(b)(1)(B)(iii), 116 Stat. at 2922, does not alter the express purpose of the scheme or its intended beneficiaries.  Congress required agencies to prepare and publish privacy impact assessments in order to

20

ensure that agencies will take account of potential effects on individual privacy, not to provide information to the general public.

The district court did not address the purposes of the provision at issue here, and instead cited the general purpose section of the E-Government Act as a whole, which describes, among other purposes, an effort "[t]o make the Federal Government more transparent and accountable." *See* Mem. Op. 16 [JA 29] (alteration in original) (quoting E-Government Act § 2(b)(9), 116 Stat. at 2901). Some provisions of the E-Government Act were indeed designed to increase transparency. The Act requires certain agency officials to "promote an integrated Internet-based system of providing the public with access to Government information and services," E-Government Act § 204(a)(1), 116 Stat. at 2913, and contains a section designed "to improve the methods by which Government information, including information on the Internet, is organized, preserved, and made accessible to the public," *id.* § 207(a), 116 Stat. at 2916. But this case has nothing to do with those provisions, and instead relates to a provision designed to provide sufficient protections for personal privacy.

Plaintiff cannot compensate for the lack of a cognizable interest in the Commission's action by asserting that the inability to review a privacy impact assessment caused it to submit FOIA requests to obtain information about the Commission's activities. *See* Decl. of Eleni Kyriakides [JA 236]; Mem. Op. 25-26 [JA 38-39]. Any organizational plaintiff asserting an interest in educating the public could make this assertion. Plaintiff's FOIA request cannot plausibly be compared to

21

the organizational burden found sufficient in *People for the Ethical Treatment of Animals v.*
*U.S. Dep't of Agriculture*, 797 F.3d 1087 (D.C. Cir. 2015), where an organization had
regularly relied on a particular category of agency report, and compensated for the
absence of that report by engaging in its own investigations and research efforts. *Id.*
at 1095-96.

   In sum, plaintiff claims standing to enjoin a collection of data that will cause it
no injury, on the theory that it would read a privacy impact assessment regarding the
collection of that data if it issued. Even if plaintiff might have standing to seek
disclosure of a privacy impact assessment, it lacks standing to enjoin agency action
that does not cause it to suffer any cognizable harm. And plaintiff in any event lacks
informational standing because the provision at issue was designed to protect personal
privacy, not to facilitate plaintiff's efforts to educate the public.

**II.    Plaintiff does not have a likelihood of success on the merits**
**because neither the President, who established the Commission,**
**nor the Commission itself nor any other relevant actor is an agency**
**for purposes of the E-Government Act or the APA.**

   The district court properly concluded that the Presidential Advisory
Commission on Election Integrity is an advisory body and is not an agency. That
conclusion forecloses plaintiff's claim for two related but independent reasons. First,
the substantive requirements on which plaintiff relies apply only to agencies. *See*
E-Government Act § 208, 116 Stat. at 2921-22. Second, plaintiff's cause of action is

under the Administrative Procedure Act, which also only applies to agency action. *See* 5 U.S.C. § 706.

The district court expressly addressed only the APA issue, but the logic of its decision forecloses plaintiff's arguments under the E-Government Act as well. Several of plaintiff's arguments on appeal are relevant only to the APA; because plaintiff needs to prevail on both issues to have a likelihood of success on the merits, the E-Government Act may provide the simplest ground for affirmance of the district court's merits determination. For that reason, and for ease of exposition, we begin with the E-Government Act.

### A. The requirements of the E-Government Act do not apply to the President, the Commission, the Director of White House Information Technology, or any other relevant entity or official.

**1.** It is undisputed that the requirements of the E-Government Act apply only to "agenc[ies]." E-Government Act § 208(b), 116 Stat. at 2921-22. The E-Government Act adopts the definition of agency contained in the Paperwork Reduction Act, *see id.* § 201, 116 Stat. at 2910 (adopting definition in 44 U.S.C. § 3502), which, as relevant here, defines "agency" to mean "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 44 U.S.C. § 3502. This definition is materially indistinguishable from the definition that appears

in the Freedom of Information Act (FOIA), 5 U.S.C. § 552(f)(1).  The Supreme Court

has squarely held that under the FOIA definition, the President and "the President's

immediate personal staff or units in the Executive Office whose sole function is to

advise and assist the President are not included within the term 'agency.'" *Kissinger v.*

*Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980) (quotation marks

omitted).

Entities within the Executive Office of the President may qualify as agencies

only if they exercise "substantial independent authority."  *Meyer v. Bush*, 981 F.2d 1288,

1292 (D.C. Cir. 1993).  For example, the Council on Environmental Quality, which

has, among other things, the power to promulgate regulations that are legally binding

on other agencies, qualifies as an agency even though it is located in the Executive

Office of the President.  *See id.*

**2.**  The requirement to conduct a privacy impact analysis thus has no

applicability to the President, who established the Commission (or the Vice President,

who chairs the Commission).  The requirement also does not apply to the Director of

White House Information Technology, whose responsibilities "amount to providing

operational and administrative support services for information technology used by

the President, Vice President, and close staff."  Mem. Op. 31 [JA 44].  *See*

Memorandum on Establishing the Director of White House Information Technology

and the Executive Committee for Presidential Information Technology 1 [JA 215]

(Director is "responsible for the information resources and information systems

24

provided to the President, Vice President, and [Executive Office of the President] by the Presidential Information Technology Community").  As the district court explained, for all relevant purposes, with respect to the Director of White House Information Technology, this case is on all fours with *Citizens for Responsibility & Ethics in Washington v. Office of Administration*, 566 F.3d 219 (D.C. Cir. 2009), in which this Court held that the Office of Administration lacked substantial independent authority because it does not "perform tasks other than operational and administrative support for the President and his staff," *id.* at 224.  *See* Mem. Op. 31-32 [JA 44-45].  Plaintiff makes no attempt to distinguish this precedent or take issue with the district court's reasoning.

Plaintiff fares no better in suggesting that the Executive Office of the President, in its entirety, should be considered an agency.  Appellant's Br. 39-40.  "[I]t has never been thought that the whole Executive Office of the President could be considered a discrete agency under FOIA."  *United States v. Espy*, 145 F.3d 1369, 1373 (D.C. Cir. 1998).  And the Supreme Court has made clear that even though "[t]he FOIA does render the 'Executive Office of the President' an agency subject to the Act," *Kissinger*, 445 U.S. at 156 (quoting provision now codified at 5 U.S.C. § 552(f)(1)), the statutory definition should not be interpreted to include "units in the Executive Office whose sole function is to advise and assist the President," *id.* (quoting H.R. Rep. No. 93-1380, at 15 (1974) (Conf. Rep.)).

**3.**  Plaintiff's attempt to characterize the Commission itself as an "agency" fails at every turn.  The sole purpose of the Commission is to provide advice.  That is the nature of a typical advisory committee.[2]  Indeed, the Executive Order that created the Commission specified that the Commission would be "solely advisory."  Exec. Order No. 13,799, § 3 [JA 55].  The Commission has been vested with no other authority.

In some instances, it is not immediately apparent whether an entity created by the President is an "agency."  In *Meyer v. Bush*, for example, this Court addressed a Task Force on Regulatory Relief that was authorized to provide guidance to the Director of the Office of Management and Budget and to address disagreements between the Office of Management and Budget and other agencies, either by resolving them or by presenting them to the President.  981 F.2d at 1290.  The Court assessed the degree to which the Task Force could exercise authority independent of the President, and ultimately concluded that the Task Force did not act with sufficient independence of the President to render it an agency within the meaning of FOIA.  *See id.* at 1294-95.

This case is far simpler than *Meyer*: the Commission does not exercise *any* authority other than merely to advise the President.  For the same reason, this case

---

[2] District courts in this Circuit have long recognized that "[a]n entity cannot be at once both an advisory committee and an agency."  *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 33 (D.D.C. 2011); *see also Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 36 (D.D.C. 2006); *Wolfe v. Weinberger*, 403 F. Supp. 238, 242 (D.D.C. 1975); *Gates v. Schlesinger*, 366 F. Supp. 797, 798-99 (D.D.C. 1973).

presents none of the difficulties that sometimes arise in determining whether an entity within the Executive Office of the President exercises independent authority. *See Meyer*, 981 F.2d at 1292 (discussing distinction between Council of Economic Advisors, which was not a FOIA agency, and Council on Environmental Quality, which was a FOIA agency because it had authority to perform functions beyond providing advice and assistance to the President).

Plaintiff suggests that the act of data collection transforms an advisory committee into an agency, stating that data collection is not "incidental to [the Commission's] advisory role." Appellant's Br. 41. But the Commission has no role other than advising the President. It is collecting data in order to be better informed to provide such advice, not in furtherance of any other function.

Plaintiff is likewise mistaken to assert that the Commission is acting "with the force and effect of an agency." Appellant's Br. 41-42. Plaintiff properly does not suggest that the Commission was provided any authority to compel the production of documents or to exercise any other traditional functions of an agency. Nothing would stop any purely non-governmental entity from making a request to States similar to that made by the Commission; the Commission was not acting pursuant to any grant of independent authority that would render it an agency. In contrast, in *Energy Research Foundation v. Defense Nuclear Facilities Safety Board*, 917 F.2d 581 (D.C. Cir. 1990), relied on by plaintiff, the Board at issue "ha[d] at its disposal the full panoply of investigative powers commonly held by other agencies of government."

27

*Id.* at 584. In particular, the Board could "compel testimony, require the production of documents, . . . promulgate its own regulations," and "require the Secretary to report to it classified information and other information protected from disclosure." *Id.* at 582.

**4.** The General Services Administration (GSA), unlike the other entities discussed in plaintiff's brief, is an agency. But plaintiff does not claim that GSA has taken or intends to take any action that violates the E-Government Act or any other statute. Instead, plaintiff notes that the Executive Order contemplates that GSA will provide support services for the commission. *See* Exec. Order No. 13,799, § 7(a) [JA 56] (stating that GSA will "provide the Commission with such administrative services, funds, facilities, staff, equipment, and other support services as may be necessary to carry out its mission"). On this basis, plaintiff argues that GSA has unlawfully *withheld* agency action by failing to "facilitate the collection of data for the Commission" and prepare a privacy impact assessment. Appellant's Br. 43. But under no plausible theory did GSA act unlawfully in refraining from conducting a privacy assessment on data it never collected. While the Executive Order authorizes the Commission to use the GSA as it deems necessary, the Order of course does not make the GSA the *exclusive* source of support for the Commission and thereby preclude the Commission from relying instead on White House staff in collecting and storing data. And in any event, plaintiff unsurprisingly cites no authority indicating

28

that an agency can be sued for unlawfully withholding the very action that the plaintiff

seeks to enjoin.

> **B.     Plaintiff likewise fails to establish a cause of action under the APA, which applies only to agencies.**

The APA defines "agency," with certain exceptions not relevant here, as "each

authority of the Government of the United States, whether or not it is within or

subject to review by another agency."  5 U.S.C. § 701(b)(1).  The Supreme Court has

held that the President, who established the Commission, is not an "agency" for

purposes of the APA.  *See Franklin v. Massachusetts,* 505 U.S. 788, 800-01 (1992).  For

the reasons given above, an advisory committee established for the sole purpose of

advising the President is likewise not an agency.

Plaintiff is mistaken to suggest that the requirement that an agency exercise

independent authority does not apply to the definition used for purposes of the

APA's judicial-review provisions.  The APA contains two identical definitions of

"agency," one for purposes of the statute's substantive requirements and another for

purposes of the judicial-review provisions.  *See* 5 U.S.C. §§ 551(1), 701(b)(1).  There is

no basis for plaintiff's apparent view that these two identical provisions of the same

statute should be interpreted differently.  Moreover, as plaintiff recognizes, a single

definition of "agency" originally governed the entire APA.  *See* Appellant's Br. 28.  It

was subsequently reproduced in two separate subchapters when Title 5 was codified

in 1966.  Act of Sept. 6, 1966, Pub. L. No. 89-554, 80 Stat. 378.  That codification,

which was designed to be "without substantive change," H.R. Rep. No. 89-901, at 1 (1965), provides no basis for differentiating between the two definitions.

In 1971, the definition of agency applicable to the substantive requirements of the APA also applied to the FOIA. This Court interpreted that provision in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971), and concluded that for purposes of the APA and the FOIA, an "agency" was an "administrative unit with substantial independent authority in the exercise of sufficient functions." *Id.* at 1073. *See* Mem. Op. 31 n.5 [JA 44 n.5] (discussing that history). In 1974, Congress amended the definition of "agency" that applies to the FOIA, but Congress did not abrogate this Court's holding in *Soucie*; rather, Congress codified this Court's holding. *See* H.R. Rep. No. 93-1380, at 15; *Kissinger*, 445 U.S. at 156. And most relevant for present purposes, the 1974 amendments left the APA definition untouched. This Court's decision in *Soucie* thus squarely controls the issue of whether an entity can be an agency for purposes of the APA even though it does not exercise substantial independent authority.

In short, the Commission does not qualify as an agency because it is an advisory committee that lacks independent authority, and that principle controls this case. [3]

---

[3] Plaintiff does not advance its argument by relying on cases in which the defendants included entities that were indisputably agencies, so the question whether other defendants were agencies was not discussed. *See Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991) (Archivist of the United States was a defendant); *Citizens for Responsibility & Ethics in Wash. v. Executive Office of the President*, 587 F. Supp. 2d 48

## III.    The other relevant factors support denial of a preliminary injunction.

The other preliminary injunction factors likewise counsel against the issuance

of a preliminary injunction.  As noted above, the district court properly concluded

(and plaintiff has not challenged on appeal) that plaintiff is not injured by the data

collection that it seeks to enjoin.  *See supra* pt. I.A.  Likewise, enjoining the data

collection will not redress any asserted informational injury plaintiff may have

suffered.  *See supra* pt. I.B.1.  Accordingly, a preliminary injunction prohibiting the

Commission from collecting data would not redress any injury, much less irreparable

injury.

Even if enjoining the data collection somehow redressed an informational

injury, the balance of harms would not favor plaintiff.  Plaintiff's interest in

information for its own sake, divorced from any concrete interest in agency action,

could not outweigh "the interest of advisory committees to engage in their work."

Mem. Op. 35 [JA 48] (quotation marks omitted).  The injunction requested here

would limit the Commission's ability to gather information relevant to its task, thus

hampering its ability to accomplish its mission and interfering with the President's

---

(D.D.C. 2008) (National Archives and Records Administration and Archivist of the
United States were defendants); *Public Citizen Health Research Grp. v. Commissioner, Food
& Drug Admin.*, 724 F. Supp. 1013 (D.D.C. 1989) (Commissioner of the Food and
Drug Administration and Department of Health and Human Services were
defendants).

ability to obtain advice.  No such intrusion is warranted, particularly in a case in which, as the district court recognized, the right asserted by plaintiff would need to be created "out of whole cloth."  *Id.*

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

CHAD A. READLER
  *Acting Assistant Attorney General*
CHANNING D. PHILLIPS
  *United States Attorney*

MARK B. STERN

 *s/ Daniel Tenny*
DANIEL TENNY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1838*
  *daniel.tenny@usdoj.gov*

SEPTEMBER 2017

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,768 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Daniel Tenny*
Daniel Tenny

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2017, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Daniel Tenny*
Daniel Tenny

**ADDENDUM**

# TABLE OF CONTENTS

Administrative Procedure Act:

    5 U.S.C. § 551(1) ................................................................................. A1

    5 U.S.C. § 701(b) .............................................................................. A2

    5 U.S.C. § 706 ................................................................................... A3

E-Government Act of 2002:

    § 201.................................................................................................. A4

    § 208.................................................................................................. A4

Paperwork Reduction Act:

    44 U.S.C. § 3502................................................................................ A7

Freedom of Information Act:

    5 U.S.C. § 552(f)(1) .......................................................................... A8

**5 U.S.C. § 551(1)**

**§ 551. Definitions**

For the purpose of this subchapter—

(1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

> (A) the Congress;

> (B) the courts of the United States;

> (C) the governments of the territories or possessions of the United States;

> (D) the government of the District of Columbia;

> or except as to the requirements of section 552 of this title—

> (E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

> (F) courts martial and military commissions;

> (G) military authority exercised in the field in time of war or in occupied territory; or

> (H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49; or sections 1884, 1891-1902, and former section 1641(b)(2), of title 50, appendix;

A1

**5 U.S.C. § 701(b)**

**§ 701.  Application; definitions**

 . . .

(b) For the purpose of this chapter--

(1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include--

(A) the Congress;

(B) the courts of the United States;

(C) the governments of the territories or possessions of the United States;

(D) the government of the District of Columbia;

(E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

(F) courts martial and military commissions;

(G) military authority exercised in the field in time of war or in occupied territory; or

(H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II of chapter 471 of title 49; or sections 1884, 1891-1902, and former section 1641(b)(2), of title 50, appendix; and

(2) "person", "rule", "order", "license", "sanction", "relief", and "agency action" have the meanings given them by section 551 of this title.

**5 U.S.C. § 706**

**§ 706.  Scope of review**

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

A3

**E-Government Act of 2002**

## Sec. 201.  DEFINITIONS

Except as otherwise provided, in this title the definitions under sections 3502 and 3601 of title 44, United States Code, shall apply.

. . .

## Sec. 208.  PRIVACY PROVISIONS.

(a) PURPOSE.—The purpose of this section is to ensure sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government.

(b) PRIVACY IMPACT ASSESSMENTS.—

(1) RESPONSIBILITIES OF AGENCIES.—

(A) IN GENERAL.—An agency shall take actions described under subparagraph (B) before—

(i) developing or procuring information technology that collects, maintains, or disseminates information that is in an identifiable form; or

(ii) initiating a new collection of information that—

(I) will be collected, maintained, or disseminated using information technology; and

(II) includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government.

(B) AGENCY ACTIVITIES.—To the extent required under subparagraph (A), each agency shall—

(i) conduct a privacy impact assessment;

(ii) ensure the review of the privacy impact assessment by the Chief Information Officer, or equivalent official, as determined by the head of the agency; and

(iii) if practicable, after completion of the review under clause (ii), make the privacy impact assessment publicly available through the website of the agency, publication in the Federal Register, or other means.

A4

(C) SENSITIVE INFORMATION.—Subparagraph (B)(iii) may be modified or waived for security reasons, or to protect classified, sensitive, or private information contained in an assessment.

(D) COPY TO DIRECTOR.—Agencies shall provide the Director with a copy of the privacy impact assessment for each system for which funding is requested.

(2) CONTENTS OF A PRIVACY IMPACT ASSESSMENT.—

(A) IN GENERAL.—The Director shall issue guidance to agencies specifying the required contents of a privacy impact assessment.

(B) GUIDANCE.—The guidance shall—

(i) ensure that a privacy impact assessment is commensurate with the size of the information system being assessed, the sensitivity of information that is in an identifiable form in that system, and the risk of harm from unauthorized release of that information; and

(ii) require that a privacy impact assessment address—

(I) what information is to be collected;

(II) why the information is being collected;

(III) the intended use of the agency of the information;

(IV) with whom the information will be shared;

(V) what notice or opportunities for consent would be provided to individuals regarding what information is collected and how that information is shared;

(VI) how the information will be secured; and

(VII) whether a system of records is being created under section 552a of title 5, United States Code, (commonly referred to as the "Privacy Act").

(3) RESPONSIBILITIES OF THE DIRECTOR.—The Director shall—

(A) develop policies and guidelines for agencies on the conduct of privacy impact assessments;

(B) oversee the implementation of the privacy impact assessment process throughout the Government; and

A5

(C) require agencies to conduct privacy impact assessments of existing information systems or ongoing collections of information that is in an identifiable form as the Director determines appropriate.

(c) PRIVACY PROTECTIONS ON AGENCY WEBSITES.—

(1) PRIVACY POLICIES ON WEBSITES.—

(A) GUIDELINES FOR NOTICES.—The Director shall develop guidance for privacy notices on agency websites used by the public.

(B) CONTENTS.—The guidance shall require that a privacy notice address, consistent with section 552a of title 5, United States Code—

(i) what information is to be collected;

(ii) why the information is being collected;

(iii) the intended use of the agency of the information;

(iv) with whom the information will be shared;

(v) what notice or opportunities for consent would be provided to individuals regarding what information is collected and how that information is shared;

(vi) how the information will be secured; and

(vii) the rights of the individual under section 552a of title 5, United States Code (commonly referred to as the "Privacy Act"), and other laws relevant to the protection of the privacy of an individual.

(2) PRIVACY POLICIES IN MACHINE–READABLE FORMATS.—The Director shall issue guidance requiring agencies to translate privacy policies into a standardized machine-readable format.

(d) DEFINITION.—In this section, the term "identifiable form" means any representation of information that permits the identity of an individual to whom the information applies to be reasonably inferred by either direct or indirect means.

A6

**44 U.S.C. § 3502**

**§ 3502.  Definitions**

As used in this subchapter--

(1) the term "agency" means any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency, but does not include--

(A) the Government Accountability Office;

(B) Federal Election Commission;

(C) the governments of the District of Columbia and of the territories and possessions of the United States, and their various subdivisions; or

(D) Government-owned contractor-operated facilities, including laboratories engaged in national defense research and production activities;

**5 U.S.C. § 552(f)**

**§ 552.  Public information; agency rules, opinions, orders, records, and proceedings**

. . .

(f) For purposes of this section, the term--

    (1) "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency;  . . .